Matter of the Probate of the Last Will and Testament of LEWIS G. SMITH, Deceased.

(Surrogate's Court, Erie County, May, 1920.)

**Wills — contradictory testimony of subscribing witnesses — probate decreed.**

> Testator, who left him surviving nine full brothers and sisters, executed in the presence of one of his brothers a last will by which the entire estate was to be divided into nine parts, eight of which were given directly to brothers and sisters and the other to the family of the remaining brother, who was excluded for good and sufficient reasons expressed by testator to surviving friends who testified to expressions made by the testator while living. A half-brother of testator and the thirteen children of his two deceased half-brothers contested the probate of the will. The attesting witnesses were father and son, associated in the practice of the law. The father unhesitatingly and unequivocally testified that the testator was of sound mind, memory and understanding, while the son, conceding the signing, publication and execution of the instrument, testified that he did not know that he believed that the testator was competent to make a will. *Held*, that it appearing to the satisfaction of the surrogate that the testator thoroughly appreciated the value and extent of his property, and that the will was fair beyond criticism, probate will be decreed.

PROCEEDING upon the probate of a will.

Lawrence J. Collins, for proponent.

Brendel, Bagot & Magoffin, for contestants.

HART, S. Lewis G. Smith, the decedent, had been for many years preceding his death a practicing physician and surgeon resident of the city of Buffalo, successful and in good standing. Doctor Smith, accompanied by his brother, visited the office of Mr. Edmund J. Plumley, a practicing attorney, on the 9th day of February, 1918, and requested that a will be drawn,

Surrogate's Court, Erie County, May, 1920. [Vol. 112.

the provisions of the instrument being discussed by the brothers in the presence of Mr. Plumley and agreed upon. A pencil memorandum was made of the proposed will, which was read to the doctor, and he was instructed to call at the office after luncheon, when the document would be typewritten and prepared for signature and execution. Following instructions the testator and his brother returned to the office of the attorney, the completed document was read over to the doctor in the presence of his brother and Mr. Albert W. Plumley, a son of Edmund J. Plumley, associated with his father in the practice of the law. He was called into the office to act as a witness to the will, heard the instrument read, signed and witnessed the paper purporting and presumed to be a will, all of which is sworn to in detail by both witnesses, the father asserting his belief in the soundness of mind and memory of the testator. A most unusual and amazing condition arises when the son is interrogated on direct examination as to his opinion of the testator's mental condition. He states: '' I don't know that I have any opinion on that subject. Q. At the time you signed this will you believed this man competent to make a will, did you not? A. No, I don't know that I did.''

The attitude of the witness, while not entirely hostile, concedes the signing, publication and execution. The father unhesitatingly and unequivocally testifies that the testator was of sound mind, memory and understanding, while the son refuses to support the father's testimony with a full realization of the legal responsibility resting upon a subscribing witness to a will.

Doctor Smith left surviving him nine full brothers and sisters and the instrument offered for probate divides his property and estate into nine parts, eight

parts directly to the brothers and sisters and the remaining part to the family of the remaining brother, who is excluded for good and sufficient reasons expressed by him to his surviving friends who have testified to expressions made during his lifetime. The testator had three half-brothers, resident of Canada, two of whom died leaving thirteen children. The surviving half-brother and the children are the contestants, the excluded brother, Dixon, intervening and joining in the endeavor to break the will.

The decedent suffered from a seizure, or stroke of apoplectic character some years preceding his death, classified as hemiplegia. He recovered and cleared in health so that he was able to walk about and resumed the practice of medicine, in which he continued up to a short time preceding his death. He suffered from an impediment in his speech also, but after hearing the witnesses who had known him intimately, Rev. J. T. Haugh, Dr. James Stoddart and Dr. Edward M. Dooley, I can find nothing in the record of his conduct that indicates such an impairment of the mind or brain as to affect his testamentary capacity.

The constant and tried test as to whether or not the testator was able and competent to appreciate the natural objects of his bounty and the value and extent of his property, applied to the present case, is convincing to my mind that the testator thoroughly appreciated the value and extent of his property; that he worried about some of his speculative investments, and that he endeavored, attempted and succeeded, despite unusual obstacles, to execute a valid last will and testament which was generous to the last degree, and fair beyond criticism.

A decree of probate may be entered in accordance with the above memorandum.

Decreed accordingly.